## VORE and Others *v.* HURST.

Where a promissory note is indorsed by the payee, whose name is followed
upon the back of the note by other names in blank, parol evidence will not
be permitted to vary the legal effect of the indorsements thus appearing
upon the note.

APPEAL from the *Wayne* Circuit Court. *Thursday, December 22.*

WORDEN, J.—This was an action by the appellee against
the appellants.

The complaint contained several paragraphs, but the re-
covery below was had only upon the fifth, which is as fol-
lows, viz.:

" For further and fifth count, the said plaintiff says that
on the 10th of *March*, 1853, the said defendants, *Caleb B.
Smith*, *S. Meredith*, *Jacob Vore*, *Pleasant Johnson*, *Charles
H. Raymond*, *John Crum*, and *Robert Murphy*, executed
their promissory note to *Thomas Tyner*, whereby they pro-
mised to pay him, six months after date, 1,000 dollars, for

value received, a copy of the note being herewith filed, which note the said *Tyner* then and there indorsed to the plaintiff, and he avers that said *Meredith, Vore, Johnson, Raymond, Crum,* and *Murphy* placed their names on the back of said note, but that it was not their intention to assume any different liability from that of *Smith,* and that the purpose of their indorsement was to give *Smith* credit with the plaintiff, to whom the note was to be indorsed; that the note was given for borrowed money—money loaned to all the defendants, and at the request of all the defendants; but they have wholly failed to pay," &c.

The note set out is as follows, viz.:

"*Cambridge, March* 10, 1853.

"Six months after date, I promise to pay to the order of *Thomas Tyner,* one thousand dollars, for value received.

"*Caleb B. Smith.*"

The note was indorsed: "*Thomas Tyner, S. Meredith, Jacob Vore, Pleasant Johnson, Charles H. Raymond, John Crum, Robert Murphy.*"

Demurrer overruled, and exception taken.

Answer in denial.

Trial by jury; verdict and judgment for the plaintiff, a new trial being refused.

*Smith* and *Meredith* do not appear to have been parties to the suit. The verdict and judgment were rendered against *Vore, Johnson, Raymond, Crum,* and *Murphy,* and not against *Tyner.*

On the trial, it appeared that the president and directors of the *Cincinnati, Cambridge, and Chicago Short Line Railroad Company* wished to borrow money to make a survey of their road. *Hurst* proposed to lend the money, if the directors would bind themselves individually for its payment. The money was lent, and used for the purposes of the road, and the note in question given, the parties to it being the officers of the company. *Smith* was president, *Tyner,* to whom the money was paid, was secretary or treasurer, and the others directors. The note appears to have been drawn up and signed by *Smith,* as maker, and indorsed by *Tyner,* the payee, and the other parties, all

as one entire transaction, and delivered to *Hurst*. There was evidence from which it might, perhaps, be inferred that all the parties whose names are upon the note intended to bind themselves equally for its payment. The question is presented in the record, under various forms, whether the parties placing their names upon the back of the note, are liable as indorsers only, or whether they can be shown, by parol proof, to be liable, primarily, as makers. If liable only as indorsers, there can be no recovery in the case, as no diligence is shown to collect of the maker, and no excuse for the want of such diligence. If the appellants are liable, in this case, it is on the ground that they are to be considered, under the circumstances, as makers of the note.

The note itself does not show any liability against the appellants as makers. Their contract is that of indorsers, and the question arises whether parol evidence is admissible to change the character of the liability as shown by the note itself, and render the indorsers liable in the capacity of makers. As a general proposition, it is not disputed that parol evidence is inadmissible to vary the legal effect of a written instrument. Thus, in *Wilson* v. *Black*, 6 Blackf. 510, it was held that the legal effect of a blank indorsement of a promissory note, transferred in a regular course of business, could not be controlled by parol evidence that the indorsement was without recourse.

But it is insisted by the appellee "that where parties write their names upon a note at the time it is executed, whether upon the face or back, it is competent to show, by parol evidence, what liability the parties really intended to assume, and hold them responsible accordingly, without reference to the position of their names upon the note."

In the case of *Wells* v. *Jackson*, 6 Blackf. 40, the Court, after examining the *Massachusetts* and *New York* cases, say: " The deduction which we draw from these authorities is, that the blank indorsement of unnegotiable paper, made at the date of the contract, and unexplained by extrinsic testimony, confers upon the payee the authority to hold the indorser liable, on the original contract, as a

Nov. Term,
1859.

VORE
v.
HURST.

surety; and that a similar unexplained indorsement of negotiable paper renders the indorser liable only as an indorser, with the ordinary rights and privileges incident to that character. But that, in either case, the liability designed to be assumed, and the authority intended to be given by the indorsement, may be explained by the attendant circumstances, and the *prima facie* responsibility be changed into one of another kind."

The doctrine of this case was followed in *Early* v. *Foster*, 7 Blackf. 35; *Harris* v. *Pierce*, 6 Ind. R. 162; and *Cecil* v. *Mix*, *id.* 478.

The doctrine thus established may, perhaps, be deemed the settled law of this state, but it seems to us to be wholly inapplicable to the case at bar. The indorsement by the payee of a note not negotiable, could not have the effect of transferring the title to the note; and, because it could not thus operate as a legal indorsement, it might, in order to give the transaction any binding obligation, be construed as equivalent to a promise to pay the note, and render the indorser liable thereon as maker. Such was the case of *Josselyn* v. *Ames*, 3 Mass. R. 274, cited in *Wells* v. *Jackson, supra.*

Questions touching the liabilities of parties indorsing their names in blank upon the back of promissory notes, have frequently arisen in *New York* and *Massachusetts*, as well as in other states, since the cases referred to in *Wells* v. *Jackson, supra.* The cases are mostly collected in the notes to § 473, *et seq.*, of Story on Prom. Notes. They are reviewed in *Ellis* v. *Brown*, 6 Barb. 282. *Vide* 10 *id.* 402; *Seabury* v. *Hungerford*, 2 Hill, 80; *Hall* v. *Newcomb*, 3 *id.* 233; S. C., 7 *id.* 416; *Spies* v. *Gilmore*, 1 Comst. 321; *Brewster* v. *Silence*, 4 Seld. 207; *Castle* v. *Candee*, 16 Conn. R. 223; *Taylor* v. *McCune*, 1 Jones (Penn.), 460; *Crozer* v. *Chambers*, 1 Spen. (N. J.) 256; *Fear* v. *Dunlap*, 1 Green (Iowa), 331; *Jennings* v. *Thomas*, 13 S. and M. (Miss.) 617; *The Union Bank* v. *Willis*, 8 Met. 504.

The later cases in *New York* seem to overturn their former doctrine; and it would now seem that, in that state, a party indorsing his name in blank upon the back

of a promissory note, can be held liable only as an in-dorser.

In *Spies* v. *Gilmore*, *supra*, BRONSON, J., said: "There are a few cases in the books which hold, in effect, that a written contract of one kind may be turned into a contract of a different kind by parol proof concerning the intention of the parties; that the indorser of a promissory note may, under certain circumstances, be charged as maker or guarantor; and that the guarantor of a promissory note may sometimes be charged as maker or indorser. Although these cases stand upon no principle, it has been a work of some time and difficulty to get rid of them. The Court of Errors was at first equally divided on the question; but, after a second argument, the Court decided, by a pretty strong vote, to uphold contracts as they had been made by the parties, instead of making new contracts for them."

The decisions, however, are not uniform on this question; some holding that such indorsement is open to parol proof, to show that it was intended to create the liability of a guarantor or maker, and others holding the reverse. In this connection, the remarks of WAITE, J., in *Castle* v. *Candee*, *supra*, are not inappropriate. He observes: "It is greatly to be regretted that a contract of this mercantile character, upon an instrument designed upon its face to circulate in the community, should receive so many different constructions; that its meaning should depend upon whether it was made on this or that side of a state line; that it should be necessary for a person, before he could know what contract is contained in the indorsement, to inquire whether it was made in *Massachusetts*, *New York*, or *Connecticut*, and if in the latter state, whether there are any witnesses by which a contract may be proved different from what the law would otherwise imply. And, perhaps, it would have been better had our Courts held, that such indorsements, like those made by the payee of a note, have a fixed legal character, not depending for their meaning upon the vague and uncertain recollection of witnesses, and circumstances often imperfectly presented on the trial;

Nov. Term, 1859.

VORE
v.
HURST.

that every one, upon looking at such indorsement, might say at once what contract it contained."

But whatever diversity there may be in the cases, in respect to the question, whether parol evidence is admissible to show the kind of liability intended to be assumed by such blank indorsement, it is believed that, in all the cases where the party thus indorsing has been held liable as maker, the note was either not negotiable, or the indorsement was made before the note was negotiated, and the contract or liability thus assumed, inured to the benefit of the payee. This view is sustained by what is said in *Dean* v. *Hall*, 17 Wend. 214, which was an action on a note made by *Coleman* to *Howard* or bearer, and indorsed on the back in blank by *Hall*. COWEN, J., after reviewing the cases, says: "Such are the cases relied upon to sustain this declaration. I think the utmost they establish, is, that where the defendant is privy to the consideration, and indorses a note not negotiable, or, at most, one payable to order, or to the plaintiff or bearer, and not negotiated, the declaration may then charge the defendant, as maker. This is the extent of *Herrick* v. *Carman*, and *Nelson* v. *Dubois*, which go farthest. None of the cases mean that, whatever may be the consideration, if the defendant stand in the ordinary relation of a commercial indorser, he is not to be treated as such."

In the cases decided in this Court, the contracts of indorsement inured to the payee.

We find no case holding that, where a blank indorsement thus made was concurrent with the indorsement of the note by the payee, the parties thus indorsing with him could be held liable as makers. The reason for holding that an indorsement in blank, of a note not negotiable, or a negotiable note not negotiated, may be shown by parol testimony to have been intended to create the liability of a maker, is sufficiently obvious. As before remarked, a contract of indorsement strictly, cannot be made upon a note not negotiable, even by the payee.

When a name is placed in blank upon the back of a negotiable note, by a third party, while it is in the hands of

the payee, thereby creating a liability in favor of the payee, there is no indorsement strictly, because the note, although negotiable, has not been negotiated. Now, when an indorsement is thus made in blank upon a negotiable note, inuring to the benefit of the payee, unconnected with any transfer of the note, the liability intended to be created by the indorsement does not conclusively appear, unless, indeed, it be held, in accordance with the later decision in *New York*, to create the liability of an indorser, and nothing else. But in accordance with the decisions of this Court, heretofore made, it not being conclusively presumed that such liability only was intended to be created, the contract may be said to be ambiguous. It is taken for granted that some kind of liability was intended. If the liability intended were written out upon the note, that, of course, would govern. But it not being written out, thereby leaving it uncertain whether the liability of an indorser, guarantor, or maker, was intended, the law permits parol proof to show what was the real intention of the parties, and will hold them responsible accordingly. *Vide Jennings* v. *Thomas, supra.*

But in the case at bar, there is no ambiguity to explain. The note is indorsed by the payee and the appellants, whereby it is legally transferred to the appellee, and the liability of indorsers, and nothing more, attaches to those thus making the indorsement. Although these indorsements were in blank, yet the legal effect is as well known and understood as if it had been written out, and can no more be explained by parol evidence than if it had been thus written.

In Story on Prom. Notes, § 134, it is laid down that, "If a bill be negotiable, and the payee should indorse it in blank, the indorsement will not inure as a guaranty, but simply as the contract of an indorser. The like rule will prevail if the indorsement is made by any other person than the payee, for he may well be deemed as intending to stand in the character of a second indorser, after the payee, although he was privy to the original consideration between

the drawer and the payee, and indorsed it for the accommodation of the drawer."

The evidence in the case fails to ·establish a material allegation in the complaint, viz., that *Smith* and the appellants "executed their promissory note to *Tyner*." Had the note been made by *Smith*, and indorsed in blank by the appellants before indorsement by *Tyner*, and then had *Tyner* indorsed it to *Hurst*, the latter would, of course, have been entitled to all the rights of *Tyner*, and, according to the adjudications, would have been entitled to, show, by parol, that the appellants intended to make themselves' liable to *Tyner*, as makers, which proof would, perhaps, have sustained the allegation in the complaint. The case would then have fallen within *Wells* v. *Jackson*, and the cases following it in this Court.

The evidence, instead of showing an indorsement by the appellants, by which a liability was created against them in favor of *Tyner*, simply shows an indorsement with him of the note, and the law fixes the character of the liability thus created.

*Tyner*, the payee, together with the appellants, indorsed the note. In no sense can *Tyner* be said to be a maker of the note, being the payee thereof. It is difficult to perceive how the appellants, by their indorsement, could have created a greater liability thereby, than that created by *Tyner* against himself. The language of the Court in *Seabury* v. *Hungerford, supra*, is applicable here. The Courts " never make contracts for parties, nor substitute one contract for another. This was, in legal effect, regular mercantile paper upon which the appellants contracted the obligation of indorsers, and by that obligation, and no other, are they bound." The case of *Howe* v. *Merrill*, 5 Cush. 80, is in point, and pretty conclusively shows that the appellants are not liable as makers of the note in question. The suit was upon a note made by *Stevens Merrill* to *Prescott*, and by *Prescott* indorsed in blank, and afterwards indorsed in blank by the defendant, *Arthur Merrill*. The Court say: " This is an attempt to charge a second indorser as a

guarantor. We are of opinion that the action will not lie for several reasons—1. It is no more competent to alter and vary the legal effect of a written instrument by parol evidence, than to alter and change its express terms. On the face of the paper, the defendant is liable as second indorser, with the rights and privileges of that relation, and subject only to the obligations which it imposes. One of the latter is, that the indorser is liable only on a condition, which, in this case, did not happen, of a dishonor of the note by the promisor, and seasonable notice thereof to the indorser; but the attempt is, to charge the indorser absolutely as a promisor or guarantor. All the cases from *Hunt* v. *Adams*, 5 Mass. R. 358, down, it is believed, in which one has been so charged, are the cases where the name appears on the note, but not as a regular indorser."

The note in the case at bar, it may be observed, is not placed upon the footing of bills of exchange, not being payable "in a bank in this state," but it is, nevertheless, negotiable, and the indorsers thereof can only be held liable by the exercise of due diligence on the part of the holder to collect it of the maker, or by averring and proving some valid excuse for the failure to exercise such diligence.

We are of opinion that, upon the case made, the motion for a new trial should have prevailed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. S. Newman, J. P. Siddall, J. B. Julian, N. H. Johnson,* and *G. W. Julian,* for the appellants.

*O. P. Morton, M. Wilson,* and *C. H. Burchenal,* for the appellee.